06-2295-cr
United States v. Carreto

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2008

Argued:   October 10, 2008          Decided:   October 8, 2009

Docket No. 06-2295-cr(L), 06-2344-cr(con), 06-5172-cr(con)

- - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                    Appellee,

                    v.

JOSUE FLORES CARRETO, GERARDO
FLORES CARRETO, and DANIEL PEREZ
ALONSO,

                    Defendants-Appellants.

- - - - - - - - - - - - - - - - - - - - -

Before: PARKER and LIVINGSTON, Circuit Judges,
        and CHIN, District Judge.[*]

        Appeal from judgments of the United States District Court for the Eastern District of New York (Frederic Block, District Judge) convicting defendants, following their guilty pleas, of sex trafficking crimes.  Defendants contend, inter alia, that the district court abused its discretion in denying

---

[*]     Honorable Denny Chin, United States District Judge for the Southern District of New York, sitting by designation.

their motions to withdraw their guilty pleas and imposed sentences that were excessive and based on improper considerations. Alonso also contends that the district court improperly denied his motion for substitute counsel.

AFFIRMED.

Laurie S. Hershey, Esq., Manhasset, New York, for Defendant-Appellant Josue Flores Carreto.

Julia Pamela Heit, Esq., New York, New York, for Defendant-Appellant Gerardo Flores Carreto.

Stephanie M. Carvlin, Esq., New York, New York, for Defendant-Appellant Daniel Perez Alonso.

Monica Ryan, Assistant United States Attorney, for Benton J. Campbell, United States Attorney, Eastern District of New York (David C. James, Assistant United States Attorney, Eastern District of New York, on the brief).

CHIN, District Judge:

On April 5, 2005, defendants-appellants Josue Flores Carreto ("J. Carreto"), Gerardo Flores Carreto ("G. Carreto"), and Daniel Perez Alonso ("Alonso") pled guilty to conspiracy to commit sex trafficking and related crimes. Defendants did so two months after they had rejected the Government's global plea offer and just a few minutes before the start of their trial.

Concerned with the timing of defendants' plea, the district court conducted a thorough allocution and accepted their pleas only after it was satisfied that defendants were pleading guilty knowingly and voluntarily.

Approximately one year later, as they were about to be sentenced, defendants moved to withdraw their guilty pleas. The district court denied the motions to withdraw and sentenced J. Carreto and G. Carreto principally to 50 years' imprisonment each and Alonso principally to 25 years' imprisonment.

Defendants appeal their convictions on several grounds. For the reasons that follow, the judgments of the district court are affirmed.

STATEMENT OF THE CASE

A.    The Facts

From approximately 1992 until their arrests in 2004, defendants operated a prostitution ring that smuggled Mexican women into the United States and forced them into prostitution. Defendants used violence, manipulation, and threats of physical restriction to control their victims. Defendants purposefully seduced women, including some who were under eighteen years of age, and many of whom were, according to the Government, poor and uneducated.

The victims were forced to prostitute themselves in brothels in Queens, Brooklyn, and Manhattan nearly every day. Defendants profited financially from the prostitution activities, and the victims were not allowed to keep the money they earned.

Immigration and Customs Enforcement agents arrested defendants on January 5, 2004, when they raided apartments in Queens, New York. Four victims were found in the apartments.

B.    Proceedings Below

On November 16, 2004, a grand jury returned a 27-count superseding indictment against defendants. The Government thereafter extended plea offers to defendants, giving them the opportunity to plead guilty to certain crimes in satisfaction of all the charged crimes. The final offer was contingent on all three defendants pleading guilty by February 18, 2005.

On January 6, 2005, the district court (Frederic Block, District Judge) held a conference to discuss Alonso's request for new counsel, as set forth in his December 20, 2004, pro se letter. Alonso requested that the court replace his attorney because the attorney had "no interest" in his case and Alonso "no longer trust[ed]" him. Counsel explained to the court that he had visited Alonso seven times, for approximately an hour each

- 4 -

time, over the course of the case. Counsel explained that he had also provided Alonso with discovery material. In response, Alonso stated that he was sent discovery material that did not pertain to him and his counsel was "not doing anything to help [him] out a little bit." Counsel explained to the district court that he provided Alonso with discovery material that pertained to the other defendants because it affected Alonso and his client "has to have knowledge of all the discovery that the government provides." The court, finding no basis to substitute counsel, denied Alsonso's request. The court instructed counsel as follows:

> Explain very carefully why you are giving him this material, why you believe he should think about it and why it's relevant in terms of the totality of circumstances that he should be mindful of. You know what you have to do. Spend some special time, that seems to be the crux of his complaint. Now that we have fleshed it out in court I'm sure it's going to be attended to.

On February 16, 2005, the district court held a conference to discuss whether defendants intended to accept the plea offer. The parties informed the court that defendants had not yet decided whether to accept the plea offer. In addition, although the Government's deadline for defendants to accept the

plea was February 18, 2005, Alonso's counsel had travel plans requiring him to leave New York the next day, February 17, 2005. The Government refused to extend the deadline, as the case was scheduled for trial beginning on March 28, 2005. Accordingly, the district court questioned Alonso's counsel as to his unavailability. Although sympathetic to counsel's personal commitments, the district court declined to relieve him of his duties at the "eleventh hour." Notwithstanding Alonso's counsel's travel plans, the court ordered all defense counsel to meet with their clients and to return to court the next day.

The parties returned to court the next day, February 17, 2005. The district court confirmed that the plea offer had been read to and adequately discussed with defendants. The defendants did not wish to plead guilty at that time. Pursuant to the terms of the global plea offer, the Government revoked the offer as to all three defendants. The trial was rescheduled for April 4, 2005.

As the conference was about to adjourn, Alonso handed a second pro se letter, dated February 14, 2005, to the court. The letter, like the one prior, requested new counsel. The court explained that everything raised in the letter had "been

superseded by what has happened since then" and had been "fleshed out."  G. Carreto then handed up a letter requesting new representation because he could not afford his counsel's fees. G. Carreto's counsel assured the court that he would continue to zealously represent his client regardless of his client's ability to pay.  J. Carreto then orally requested a different attorney. The court denied all three requests, holding that there was no basis to substitute counsel.

On April 4, 2005, the trial court selected and empaneled a jury.  The next day, just as the trial was about to commence, defendants informed the court that they wished to plead guilty to the entire 27-count superseding indictment, without any plea agreements.  The court carefully examined the defendants and their counsel to confirm that defendants understood the implications of their pleas, especially as a jury had already been empaneled and the trial was about to commence:

> The reason why I'm taking this amount of time is because I'm confronted with a situation when defendants are willing to plead to an entire indictment -- and you are talking about serious crimes and serious time -- it is important to make sure that they understand that they may have little to risk by going forward with the trial, since it may well be by pleading they are not going to do any better.

The court, after a thorough colloquy, was satisfied that defendants understood the consequences of their pleas. In particular, they were asked if they were satisfied with their attorneys, and all three defendants responded affirmatively. Each defendant then read out loud a statement acknowledging that he, together with the two co-defendants, smuggled four (or five) women, identified by first name and first initial of the last name, from Mexico into the United States and forced them to engage in prostitution -- "commercial sexual acts" -- in brothels in Brooklyn and Queens. Each acknowledged knowing that at least one of the women was under the age of eighteen. Each acknowledged using force and threats of force against the women. The court then accepted each defendant's plea of guilty to all 27 counts of the superseding indictment.

On April 27, 2006, more than a year later, the parties appeared for sentencing. Alonso had retained new counsel. His new counsel stated, and the court noted, that defendants had filed pro se motions to withdraw their guilty pleas. The motions alleged that (1) defendants were not adequately advised of their right to testify at trial, (2) the court did not verify that the plea was voluntary, and (3) counsel were ineffective in failing to obtain relevant documents from Mexico. Defense counsel

informed the court that they had just been made aware of potentially exculpatory information contained in Mexican trial transcripts involving the victims in the case.

The court denied defendants' motions to withdraw their guilty pleas, finding that the new evidence did not "affect the fact that they pled guilty" and defendants made a "reasoned decision to take the[] pleas." The court also denied defendants' request to adjourn sentencing. Four victims spoke and described the physical and psychological harm they had suffered. The court then sentenced defendants. In response to an argument by counsel for G. Carreto that G. Carreto was "to some extent a product of his environment" and was from a town in Mexico where "prostitution is something that occurs very frequently," the district court commented that it was important to "send a message" that prostitution "is not going to be accepted in this country."

The court sentenced G. Carreto principally to 50 years' imprisonment, J. Carreto principally to 50 years' imprisonment, and Alonso principally to 25 years' imprisonment.

## DISCUSSION

Defendants appeal to this Court on several grounds.

The issues we address below are the only ones that warrant detailed discussion.

A.    Defendants' Efforts to Withdraw Their Guilty Pleas

Defendants contend that the district court erred in denying their motion to withdraw their guilty pleas.  We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion.  See United States v. Adams, 448 F.3d 492, 498 (2d Cir. 2006).

A plea may be withdrawn only if "the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  To determine whether a defendant has met this burden, a court should consider:  "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." United States v. Schmidt, 373 F.3d 100, 102-03 (2d Cir. 2004). The district court can also rely on a defendant's in-court sworn statements that he "understood the consequences of his plea, had discussed the plea with his attorney, [and] knew that he could

not withdraw the plea." United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001).

In denying defendants' motions to withdraw their pleas here, the district court did not abuse its discretion.

First, defendants did not assert their legal innocence in moving to withdraw their pleas. Second, defendants did not move to withdraw their pleas until approximately a year after they had pled guilty -- and only after the Government had prepared for trial, a jury had been selected, and the trial was about to begin. See United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992). Third, the Government would have been prejudiced by a withdrawal of the guilty pleas, as the Government surely would have encountered difficulties were it required to re-assemble its evidence after more than a year's delay.

Moreover, in the end, defendants simply did not show "a fair and just reason" for withdrawing the guilty pleas. In their motions, defendants claimed that they were not advised of their right to testify at trial, the court did not verify the voluntariness of their pleas, and they received ineffective assistance from their respective counsel, who failed to obtain the purportedly exculpatory evidence from Mexico. These assertions were meritless. To the contrary, the district court

conducted a thorough allocation that fully complied with Rule 11 of the Federal Rules of Criminal Procedure.

The district court advised defendants of their right to proceed to trial and informed defendants that, if they went to trial, they would have the right to testify. Indeed, the court instructed defendants: "while you have the right to testify, if you wish to do so, you could not be required to testify."

The court also ensured that the pleas were taken knowingly and voluntarily. Concerned with defendants' decision to plead guilty as trial was about to begin, the Court asked defendants' counsel to explain why their clients were pleading guilty at the "eleventh hour," as they "could do no worse if they went to trial and were convicted." Each counsel, in turn, explained their respective client's reasoning -- that they were throwing themselves on the mercy of the sentencing judge. In response, the court explained that no promises were being made to defendants and "that the sentence might well be more strict than they would hope it to be." The attorneys indicated that their clients were aware of the uncertainties regarding sentencing.

Moreover, the court verified with each defendant individually

that his plea was voluntary and not based on any extrinsic promises.

Lastly, the alleged exculpatory Mexican trial transcripts brought to the district court's attention at sentencing did not warrant withdrawal of the pleas. The transcripts did not alter the fact that defendants had knowingly and voluntarily pled guilty to the charges against them. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Indeed, although defense counsel represented that the transcripts showed that three of the victims had testified -- in an exculpatory manner -- in Mexico, the record showed that both the defendants and the victims had not been in Mexico since prior to January 2004. Hence, whatever the victims might have said while they were still in Mexico could not have significantly undermined defendants' admissions that they smuggled the victims into the United States and forced them into prostitution here. Moreover, these transcripts -- unverified, in Spanish, and without translations -- were submitted to the court literally as the sentencing was about to begin, more than a year after defendants had pled guilty. Understandably, the court refused to

attach any significance to them.[2]

Accordingly, the district court did not abuse its discretion in denying defendants' motion to withdraw their guilty pleas.

B.    Alonso's Request for New Counsel

Alonso appeals the district court's denial of his request to substitute counsel.  We review the district court's denial for abuse of discretion.  See United States v. Simeonov, 252 F.3d 238, 241 (2d Cir. 2001).  To determine whether the trial court abused its discretion, we consider:  (1) the timeliness of defendant's request for new counsel; (2) the adequacy of the trial court's inquiry into the matter; (3) whether the conflict resulted in a total lack of communication between the defendant and his attorney; and (4) whether the defendant's own conduct contributed to the communication breakdown.  United States v. John Doe No. 1, 272 F.3d 116, 122-23 (2d Cir. 2001).

Alonso's request for new counsel was addressed almost

---

[2]    Defendants' contention that their counsel were ineffective because they failed to obtain the transcripts is more appropriately considered in the form of a petition under 28 U.S.C. § 2255.  See Massaro v. United States, 538 U.S. 500, 504-05 (2003) (indicating that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance," because the district court is the "forum best suited to developing the facts necessary to determining the adequacy of representation").

immediately by the district court and the court inquired adequately into the matter. There was not a total lack of communication between Alonso and his counsel. To the contrary, Alonso's counsel had met with him seven times, for approximately an hour each time. The court inquired as to the frequency and length of their meetings and was satisfied with the attention that counsel had given to the case. Counsel also provided his client with discovery materials. The court, understanding that Alonso was confused by some of the materials, requested that counsel spend some "special time" explaining the materials to his client. Counsel agreed to do so. Accordingly, the court's denial of Alonso's request was based on a detailed inquiry that assured the court that substitution of counsel was not warranted. The district court did not abuse its discretion.[3]

C.    The District Court's Comments at Sentencing

Defendants argue that the district court commented on their national origin during sentencing and that these comments compromised the appearance of justice. This argument is rejected, as the record contains nothing to suggest that the district court improperly considered, or appeared to improperly

---

[3]    Moreover, it should be noted that when Alonso pled guilty, he told the district court that he was satisfied with his attorney.

consider, defendants' national origin in sentencing them.

Our judicial system takes seriously the proposition that "not only must justice be done, it also must appear to be done." United States v. Edwardo-Franco, 885 F.2d 1002, 1005 (2d Cir. 1989). "A defendant's race or nationality may play no adverse role in the administration of justice, including at sentencing." United States v. Leung, 40 F.3d 577, 586 (2d Cir. 1994). When a sentencing judge comments on a defendant's national origin in a negative or seemingly negative manner, at a minimum, the appearance of justice is compromised. Whether a district court improperly considers a defendant's national origin is a question of law, and thus this aspect of a sentencing is reviewed de novo. United States v. Kaba, 480 F.3d 152, 156-57 (2d Cir. 2007).

At sentencing here, defendants' national origin was initially raised by defense counsel. G. Carreto's counsel argued that his client was a "product of his environment" and that "prostitution is something that occurs very frequently" in his hometown in Mexico. In response, the district court asked: "Are you suggesting because prostitution may be rampant in Mexico that the United States of America should condone it . . . when it happens here?" The court continued: "You don't think it's

necessary to perhaps send a message to others who may want to come to the United State because they think prostitution is A-okay and everything else that happened here is okay?" When speaking about deterrence, the court added:

> I'm not going to speak about Mexico. I have great respect for the country, Mexico. I can only talk about the laws of the United States which I am familiar with. . . . And it's, I think, terribly important in particular in this case to send a message loud and clear that people -- I don't care where they come from, whether they come from the United States, Mexico, any place. If they commit these crimes in the United States, they're going to be treated harshly by the law.

The record shows that defendants' national origin played no "adverse role" in the district court's sentencing decision. Although the district court did refer to Mexico, defendants' country of origin, it did so only in response to defense counsel's suggestion that G. Carreto should be treated more leniently because prostitution was acceptable in his hometown in Mexico. Moreover, the district court did not say its sentencing of defendants was intended to serve as a message to people in Mexico. Indeed, the court explicitly stated that defendants' national origin was not being considered, and that the court's intent was to send a message to anyone who would engage in these types of crimes, no matter where they came from,

whether it was Mexico or elsewhere. Accordingly, the statements referencing Mexico in this case are different from the statements referencing national origin or countries of origin in United States v. Leung, 40 F.3d 577 (2d Cir. 1994), and United States v. Kaba, 480 F.3d 152 (2d Cir. 2007). In both Leung and Kaba, "the district court referred to the publicity a sentence might receive in the defendant's ethnic community or native country and explicitly stated its intention to seek to deter others sharing that national origin from violating United States laws in the future." Kaba, 480 F.3d at 157. Here, defendants' national origin was not improperly considered.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.