13-3932(L)
*United States v. Scott*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of December, two thousand fifteen.

PRESENT:  JOSÉ A. CABRANES,
          BARRINGTON D. PARKER,
          RAYMOND J. LOHIER, JR.,
                    *Circuit Judges.*

---

UNITED STATES OF AMERICA,

        *Appellee,*                Nos. 13-3932(L), 13-4434(CON)

        v.

EVERETTE L. SCOTT, JR., TYRONE L. GILLIAMS, JR.,

        *Defendants-Appellants.*

---

**FOR EVERETTE L. SCOTT, JR.:**        Steven G. Brill, Sullivan & Brill, LLP, New York, NY.

**FOR TYRONE L. GILLIAMS, JR.:**        William R. Hamilton, Philadelphia, PA.

**FOR UNITED STATES OF AMERICA:**        Michael A. Levy, Assistant United States Attorney, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

1

Appeal from judgments of the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the District Court are **AFFIRMED**.

Following a jury trial, defendants-appellants Everette L. Scott, Jr. ("Scott") and Tyrone L. Gilliams, Jr. ("Gilliams") were each convicted of one count of securities fraud, in violation of 15 U.S.C. §§ 78ff and 78j(b), and two counts of wire fraud, in violation of 18 U.S.C. § 1343, arising from schemes to steal investor funds—one involving a purported investment in a Utah coal mine venture and one involving trading in U.S. Treasury Strips. Scott was sentenced principally to 30 months' imprisonment for each count, to run concurrently; and Gilliams was sentenced principally to 120 months' imprisonment for each count, also to run concurrently. The District Court entered judgment against Scott on October 16, 2013, and against Gilliams on November 18, 2013. This consolidated appeal followed.

On appeal, Scott argues, *inter alia*, that (1) the District Court abused its discretion by denying his motion to sever the defendants' trials; (2) the Court abused its discretion by admitting irrelevant and unduly prejudicial evidence that he purchased a used Porsche the day after the defendants received investor funds in escrow; and (3) he received ineffective assistance of counsel prior to, and during, his trial.[1] Gilliams argues, *inter alia*, that (1) the government withheld evidence from him in violation of *Brady v. Maryland*; and (2) the government violated his Sixth Amendment confrontation rights during trial. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. For the reasons set forth below, each of the defendants-appellants' arguments is without merit.

### A.    Defendant-Appellant Scott

First, Scott contends that the District Court's denial of his pretrial motion to sever was an abuse of discretion because his and codefendant Gilliams's anticipated defenses were antagonistic to each other, and because Scott would, and did, suffer "spillover prejudice" from the evidence introduced against Gilliams.

Federal Rule of Criminal Procedure 14(a) permits district courts to "sever the defendants' trials, or provide any other relief that justice requires" if the joinder of defendants for trial "appears

---

[1] Scott filed a counseled brief (by Steven G. Brill) on March 12, 2014, and filed a supplemental *pro se* brief on June 5, 2015, which reiterated and expanded upon the claims in his counseled brief and raised a litany of new arguments. At the time of submission, counsel for both Scott and Gilliams had withdrawn from the case, and both defendants were therefore proceeding *pro se*.

to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). *See also Zafiro v. United States*, 506 U.S. 534, 540 (1993). But "[t]he decision to grant or deny severance is 'committed to the sound discretion of the trial judge,'" and "[i]n order to overturn a district court's denial of a severance motion, we must conclude that the joint trial resulted in 'substantial prejudice' to the appellant." *United States v. Spinelli*, 352 F.3d 48, 54 (2d Cir. 2003) (quoting *United States v. Blount*, 291 F.3d 201, 209 (2d Cir. 2002) and *United States v. Stirling*, 571 F.2d 708, 733 (2d Cir. 1978)). "It is not enough to demonstrate that separate trials would have increased the chances of the appellant's acquittal," and the defendant must instead "show prejudice so severe that his conviction constituted a miscarriage of justice" and "amount[ed] to a denial of a constitutionally fair trial." *Id.* at 54–55 (internal quotation marks omitted).

We conclude that the District Court's denial of severance did not result in substantial prejudice that deprived Scott of a constitutionally fair trial and therefore was not an abuse of discretion. Scott's contention that the anticipated defenses—that Gilliams lacked intent to defraud because he had relied on Scott's legal advice, while Scott lacked intent to defraud because he had unwittingly acted upon Gilliams's instructions—were mutually antagonistic, rather than mere "finger-pointing," is unconvincing. *See United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003) ("Defenses are mutually antagonistic when accepting one defense requires that 'the jury must of necessity convict a second defendant.'" (quoting *United States v. Cardascia*, 951 F.2d 474, 484 (2d Cir. 1991))); *United States v. Serpoosh*, 919 F.2d 835, 837 (2d Cir. 1990) ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance." (internal quotation marks omitted)). A jury could have accepted both anticipated defenses, finding that neither Scott nor Gilliams had intent to defraud under the circumstances. And even if the defenses were mutually antagonistic, such defenses "are not prejudicial *per se*," *Zafiro*, 506 U.S. at 538, and Scott failed to demonstrate that he was prejudiced as a result of the joint trial, let alone denied a constitutionally fair trial. Indeed, at trial, Gilliams did not even advance the advice-of-counsel defense contemplated in Scott's motion to sever.

Scott's argument that severance was necessary to avoid "spillover prejudice" is equally unavailing. Even if, as Scott insists, he had a limited role in the alleged fraud schemes compared to Gilliams, and most of the evidence introduced at trial related only to Gilliams, "differing levels of culpability and proof . . . standing alone, are insufficient grounds for separate trials." *Spinelli*, 352 F.3d at 55 (alteration and internal quotation marks omitted). And the District Court reduced the potential for prejudice by instructing the jury to "bear in mind that guilt is individual," and that the "verdict of guilty or not guilty must be based solely upon the evidence—or lack of evidence— against each defendant." A-1183; *see also Zafiro*, 506 U.S. at 540–41; *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) ("[L]ess drastic measures than severance, such as limiting instructions, often will suffice to cure any risk of prejudice and permit joinder." (internal quotation marks and brackets omitted)).

Second, Scott contends that the District Court abused its discretion by admitting evidence at trial that Scott purchased a used Porsche the day after receiving investor funds in escrow, which Scott argues was irrelevant and prejudicial. "We review a district court's evidentiary rulings deferentially, mindful of its superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice," *United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010), and "we will not overturn the district court's decision to admit or reject evidence absent an abuse of discretion," *United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010).

We conclude that the District Court did not abuse its discretion by admitting evidence of Scott's Porsche purchase. The Court appropriately concluded that the purchase was relevant under Federal Rule of Evidence 401 because of its temporal proximity to the receipt of investor funds. A-475. For instance, the purchase arguably suggested that Scott had lied in his letter to Morfopoulos when he stated that he would send Gilliams the "entire amount" of the $4 million received from Morfopoulos "for purposes of placing into trade," when in reality, according to the government, Scott diverted at least $40,000 of the funds toward the purchase of the car just one day later. Assuming that Scott also objected under Rule 403, which is not clear from the record, *see* A-473–75, we conclude that the Court appropriately admitted evidence of the purchase because its probative value, as discussed by the Court, A-475, was not substantially outweighed by the danger of unfair prejudice. The purported prejudice cited by Scott—that the jury viewed the defendants as a "single unit" that stole money to support extravagant lifestyles—was also minimized by the Court's jury instruction emphasizing the individualized nature of guilt. *See* A-1183.

Third, Scott contends, in his supplemental *pro se* brief, that he was denied his Sixth Amendment right to effective assistance of counsel because the District Court inappropriately denied his request to substitute appointed counsel prior to trial, and because his appointed counsel was ineffective throughout the proceeding.

"To determine whether the trial court abused its discretion [by denying a defendant's request to substitute counsel], we consider: (1) the timeliness of defendant's request for new counsel; (2) the adequacy of the trial court's inquiry into the matter; (3) whether the conflict resulted in a total lack of communication between the defendant and his attorney; and (4) whether the defendant's own conduct contributed to the communication breakdown." *United States v. Carreto*, 583 F.3d 152, 158 (2d Cir. 2009).

Applying these factors here, we conclude that the District Court's denial of Scott's request to substitute counsel was not an abuse of discretion. Scott moved to substitute counsel—appointed more than eleven months earlier—with new counsel less than three weeks before trial, and requested a continuance that would have delayed the start of the trial. Although the Court denied the motion without first conducting a hearing or otherwise inquiring into Scott's complaints, the Court nonetheless inquired just before the start of trial about the only "substantial" complaint Scott raised in his *ex parte* letter to the Court, *cf. United States v. Hsu*, 669 F.3d 112, 123 (2d Cir. 2012)

4

(concluding that mere expression of dissatisfaction with counsel's trial performance is not a "substantial complaint"); *McKee v. Harris*, 649 F.2d 927, 932 (2d Cir. 1981) (concluding that counsel's "pessimistic forecast does not rise to the level of good cause for substitution of counsel" because "[t]he starting point for good representation is a realistic assessment of the prospects of success"), which was that Scott's appointed counsel had "misrepresented . . . [a] plea offer" to Scott. The Court confirmed that Scott's counsel had in fact accurately conveyed all plea discussions and offers to him. Thus, to the extent the timing or format of the Court's inquiry rendered it inadequate, any error would have been harmless under the circumstances. *Cf. United States v. John Doe No. 1*, 272 F.3d 116, 123 (2d Cir. 2001) ("[I]f the reasons proffered [for the proposed substitution] are insubstantial and the defendant receives competent representation from counsel, a court's failure to inquire sufficiently or to inquire at all constitutes harmless error."). Also, there was not "a total lack of communication" or a "communication breakdown" between Scott and his counsel, *see* A-57, 65–66, even if Scott would have preferred more in-person meetings with counsel. Further, Scott's counsel had previously notified the Court that he would be prepared for trial, *see* Scott Supp. Br. Ex. F, and then represented Scott through trial and sentencing and also in filing his opening brief in the instant appeal. The Court's refusal to grant the motion to substitute counsel therefore was not an abuse of discretion under the factors articulated in *Carreto*.

We decline, however, to rule on Scott's ineffective-assistance-of-counsel claim at this time. "[T]his court has expressed a baseline aversion to resolving ineffectiveness claims on direct review," *United States v. Lee*, 549 F.3d 84, 95 (2d Cir. 2008) (internal quotation marks omitted), in part because the district court "may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance," and is thus "the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial," *Massaro v. United States*, 538 U.S. 500, 505 (2003). *See also Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998). Although we have "entertained ineffective assistance claims for the first time on direct appeal when their resolution is beyond any doubt or to do so would be in the interest of justice," *United States v. Khedr*, 343 F.3d 96, 100 (2d Cir. 2003) (internal quotation marks omitted), we decline to do so here. Should Scott so choose, he may seek relief under 28 U.S.C. § 2255, the "preferable" mechanism "for deciding claims of ineffective assistance." *Massaro*, 538 U.S. at 504.

## B.    Defendant-Appellant Gilliams

First, Gilliams contends that the government withheld *Brady* material from him. Under *Brady v. Maryland*, 373 U.S. 83 (1963), the government has a duty to disclose evidence favorable to the defendant when it is material to guilt or punishment. "There are three components of a *Brady* violation: The material evidence 'must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued.'" *United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). "For *Brady* purposes, information is

material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (internal citations and quotation marks omitted); *see also United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001) ("[M]aterial required to be disclosed by *Brady* and *Giglio* is material, which, if not disclosed, creates a reasonable probability of altering the outcome . . . .").

Here, even if the evidence cited by Gilliams had been suppressed by the government and the evidence was favorable to Gilliams—neither of which is readily apparent—the evidence was not material to Gilliams's guilt or punishment. Gilliams argues that the affidavits of Parlin and Parlin's attorney, as well as certain e-mails and contracts, demonstrate that Gilliams "never dealt with" Parlin, a victim and restitution recipient. Gilliams further argues that evidence suggesting that Morfopoulos (who acted on behalf of Parlin) had been charged with crimes in Canada years before the schemes constituted impeachment evidence under *Giglio v. United States*, 405 U.S. 150 (1972). But we are unconvinced that any of this evidence had a reasonable probability of affecting the proceeding if it had been turned over to him before the trial. That Gilliams never dealt directly with Parlin does not mean Gilliams did not defraud Parlin or individuals entrusted with Parlin's funds, and the government did not seek to show at trial that Gilliams interacted directly with Parlin. Likewise, the purported Morfopoulos impeachment evidence could have had little effect on the trial, especially because no Morfopoulos testimony was introduced at trial. We therefore reject Gilliams's argument that the government violated *Brady*.

Second, Gilliams contends that he was denied his Sixth Amendment confrontation right because neither Parlin nor Morfopoulos testified during trial. "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004). Gilliams's argument fails, however, because "[t]he Sixth Amendment safeguards the right of cross-examination, but it does not require the calling of any particular witness," *United States v. Polisi*, 416 F.2d 573, 579 (2d Cir. 1969), and Gilliams points to no testimonial statements by Parlin or Morfopoulos introduced at trial that could have violated his confrontation rights, *see Crawford*, 541 U.S. at 68.

## CONCLUSION

We have considered all of defendants-appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the October 16, 2013, and November 18, 2013, judgments of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk