16-2834-cr
*United States v. Danilovich*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of April, two thousand eighteen.

PRESENT:   RICHARD C. WESLEY,
           DENNY CHIN,
                    *Circuit Judges*,
           DENISE COTE,
                    *Judge*.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                              *Appellee*,

                    v.                                        16-2834-cr

MICHAEL DANILOVICH, also known as Sealed
Defendant 2, also known as Mike Daniels, also
Known as Fat Mike, also known as Mike D,**
                              *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

\*      Denise Cote, of the United States District Court for the Southern District of New York, sitting by designation.
\*\*     The Clerk of Court is respectfully directed to amend the official caption to conform to the above.

FOR APPELLEE:                                    DANIEL NOBLE, Assistant United
                                                 States Attorney (Joshua A. Naftalis, Karl
                                                 Metzner, Assistant United States
                                                 Attorneys, *on the brief*), *for* Geoffrey S.
                                                 Berman, United States Attorney for the
                                                 Southern District of New York, New
                                                 York, New York.

FOR DEFENDANT-APPELLANT:                          ERIC M. CREIZMAN, Creizman PLLC,
                                                 New York, New York.

Appeal from the United States District Court for the Southern District of New York (Batts, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the amended judgment of the district court is **AFFIRMED**.

Defendant-appellant Michael Danilovich appeals from an amended judgment of conviction, entered August 1, 2016, after a jury trial. Danilovich was convicted of crimes related to his involvement in a racketeering enterprise that engaged in, among other things, investment fraud, healthcare insurance fraud, money laundering, and illegal gambling. He was sentenced principally to 300 months' imprisonment, and ordered to forfeit $24,479,065 and pay restitution of $22,442,040, jointly and severally with a co-defendant. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Danilovich raises a host of issues on appeal concerning: (1) the fraud counts related to a scam that collected health insurance payments for car accident

victims under New York's No-Fault Comprehensive Motor Vehicle Insurance Reparation Act, N.Y. Ins. Law § 5101 *et seq.* ("No-Fault Fraud Counts"); (2) the fraud counts related to Danilovich's participation in three investment schemes (the "Securities Fraud Counts"); (3) the district court's refusal to declare a mistrial; and (4) the substantive reasonableness of his sentence.

## 1. No-Fault Fraud Counts

Danilovich argues that the district court erred because it did not instruct the jury (1) on the meaning of "ownership" in the context of New York's No-Fault law, and (2) that the use of "runners" and the payment of kickbacks are not inherently illegal. First, we agree with the Government that Danilovich affirmatively waived any objection to the jury instruction on "ownership" because his counsel below requested the instructions that the court gave to the jury, over the Government's objection. *See United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009). Second, Danilovich did not object to the instruction on "runners" and kickbacks; his challenge is therefore subject to plain-error review. *See* Fed. R. Crim. P. 30(d).

We are not persuaded that the district court plainly erred in the instructions it gave. The court read the charges in the indictment and the statutory language, properly stated the elements of the charged offense, and instructed the jury as to the findings required for conviction on the No-Fault Fraud Counts. In any event, we are not persuaded that the district court was bound by the jury instructions that the

- 3 -

court used in Danilovich's first trial.  *See Musacchio v. United States*, 136 S. Ct. 706, 716 (2016) (law-of-the-case doctrine is a discretionary court practice).

**2.     Securities Fraud Counts**

Danilovich argues that the convictions for the Baron & Caplan investment scheme should be reversed because:  (1) the convictions were based primarily on the "uncorroborated, inherently incredible, and internally inconsistent" statements of a cooperating witness, Igor Katsman; (2) the Government failed to disclose impeachment evidence for Katsman; and (3) the district court erroneously admitted the lay opinion testimony of another cooperating witness, William Shternfeld.  Def.-Appellant's Br. 45.  Danilovich further argues that the cumulative effect of these errors, along with the improper admission of evidence from Danilovich's cellphone, prosecutorial misconduct at trial, and prejudicial conduct by the district judge, warrants reversal and a new trial on all securities fraud counts.  We disagree.

First, the evidence was sufficient to convict Danilovich of the conspiracy related to the Baron & Caplan investment scheme.  *See United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (a conviction must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted)).  Katsman's testimony directly implicated Danilovich in the scheme.  *See United States v. Truman*, 688 F.3d 129, 139 (2d Cir. 2012) (explaining that "even the testimony of a single accomplice witness is sufficient to sustain a conviction, provided it

- 4 -

is not incredible on its face or does not def[y] physical realities" (alteration in original) (citation and internal quotation marks omitted)).

Moreover, Katsman's testimony was corroborated. We "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Coplan*, 703 F.3d at 62 (citation omitted). We are not persuaded that the jury failed to properly assess and weigh the evidence presented.

Second, we are not persuaded that the district court erred in admitting Shternfeld's testimony as to the meaning of certain language used in a recorded telephone call between Danilovich and an unindicted co-conspirator. Shternfeld was personally involved in two investment frauds run by the Zemlyansky/Danilovich organization. His testimony was "rationally based on his own perception because it derived from his direct participation in the [securities fraud] activities of the charged enterprise." *United States v. Yannotti*, 541 F.3d 112, 125 (2d Cir. 2008). This direct participation in the activities of the charged enterprise was sufficient to afford Shternfeld "particular perceptions of its methods of operation [such that he could] offer helpful lay opinion testimony under Rule 701 even as to co-conspirators' actions that he did not witness directly." *Id.* at 126 n.8.

Third, we are not persuaded that the Government failed to disclose material impeachment evidence because it did not disclose prior to trial that agents had

visited Katsman once in jail to discuss Katsman's proffer or that the Government had two phone calls with Katsman to encourage and then discuss his cooperation agreement. There is no basis in the record to suggest that this information had or could have had any additional impeachment value in light of the fact that the Government had produced all of its interview reports and notes for Katsman, as well as the proffer and cooperation agreements. *See United States v. Persico*, 645 F.3d 85, 111 (2d Cir. 2011) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable . . . the undisclosed evidence may properly be viewed as cumulative, and hence not material."). We therefore agree with the district court that there was no *Giglio* violation here. *See United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) ("[U]ndisclosed evidence will be deemed material only if it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

Danilovich makes a number of other arguments -- which he contends warrant a new trial on the Securities Fraud Counts -- relating to: (1) the improper admission of cell phone evidence he contends was seized in violation of his Fourth Amendment Rights, (2) prosecutorial misconduct at trial, and (3) prejudicial conduct by the district court. The arguments fail. First, Danilovich admits that the cell phone was admitted by stipulation. He did not file a motion to suppress it before trial and waived any objection to it. *See* Fed. R. Crim. P. 12(b)(3)(C); *United States v. Ulloa*, 882 F.2d 41, 43

(2d Cir. 1989) (holding that "a motion to suppress evidence must be made before trial and that failure to make such a motion constitutes waiver").

Second, Danilovich's assertions of prosecutorial misconduct at trial -- that the Government allegedly "smil[ed] and chuckl[ed] and look[ed] at the jury and nodd[ed]" on one occasion, App. 1114-15, criticized defense counsel's "poor questioning" as creating "confusion on cross-examination," App. 1350-51, and vouched for an FBI agent -- do not, taken as a whole, demonstrate misconduct of the kind "so severe and significant as to result in the denial of [Danilovich's] right to a fair trial." *Coplan*, 703 F.3d at 86 (citation and internal quotation marks omitted).

Third, we are not persuaded that Danilovich was prejudiced by the district court's *sua sponte* sidebars and admonitions during witness questioning and argument. The district court similarly admonished the Government and *sua sponte* called for sidebars during the prosecutors' direct examinations. In any event, the district court cured any such prejudice by instructing the jury to disregard these statements by the court, explaining that "during the course of the trial, [the court] had to admonish attorneys . . . . But you should draw no inference from that." App. 1469-70; *see, e.g., United States v. Mickens*, 926 F.2d 1323, 1327-28 & n.1 (2d Cir. 1991) ("[A]ny possible prejudice . . . [as a result of the court's remarks during trial] was cured by the court's cautionary instruction.").

### 3. Mistrial Claim

Danilovich next argues that the district court improperly denied his request for a mistrial and substitution of counsel based upon the alleged ineffective assistance of Danilovich's trial counsel. In two separate letters submitted during trial, Danilovich asserted that he had not received responses to "numerous email[s], text messages and phone calls" about a witness, had "completely lost confidence in [his attorneys]," and faced "major barriers in communications" with his counsel concerning trial strategy, a witness list, and the hiring of a company to create a "demonstrative" for his defense summation. Supp. App. 11, 17, 50-51. In response to the first letter, his counsel represented that they would "continue to work zealously to defend [Danilovich] in this matter." Supp. App. 7.

The district court did not abuse its discretion in denying the motion for a mistrial and substitution of counsel. *See Renico v. Lett*, 559 U.S. 766, 774 (2010) ("The decision to declare a mistrial is left to the sound discretion of the judge." (internal quotation marks omitted)). The district court reasonably concluded that Danilovich's arguments as to his counsel's deficient performance and disagreement on trial strategy were unavailing, particularly "having observed Defense Counsel's performance during trial," and having considered Danilovich's complaints set forth in his letters. Supp. App. 9; *see United States v. Hsu*, 669 F.3d 112, 123 (2d Cir. 2012) (the mere expression of dissatisfaction with counsel's trial performance is not a "substantial complaint"). In any event, it was well within the district court's discretion to deny the motion for mistrial,

particularly given that Danilovich moved for a substitution of counsel halfway through trial. *See United States v. Carreto*, 583 F.3d 152, 158 (2d Cir. 2009) (in determining whether the district court abused its discretion, we consider, among other things, "the timeliness of defendant's request for new counsel").

### 4. Substantive Reasonableness

Finally, Danilovich argues that his sentence was substantively unreasonable. We disagree. The district court thoroughly considered the relevant section 3553(a) factors, and determined that a "substantial" sentence was warranted in light of Danilovich's prior convictions, his continued criminal activity "[w]hile out on bail," and his role "as a leader and organizer of these conspiracies." App. 1657-58. The district court also specifically noted its application of an aggravating factor because Danilovich's frauds were perpetrated against "unsuspecting and vulnerable people" and Danilovich had "robbed or bullied [the victims] out of their retirement and life savings." App. 1657.

Nor are we persuaded that Danilovich's sentence was otherwise substantively unreasonable because his co-conspirator Mikhail Zemlyansky received only a 15-year sentence. *See United States v. Wills*, 476 F.3d 103, 110 (2d Cir. 2007), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007) (Section 3553(a) "does not *require* district courts to consider sentencing disparity among co-defendants," although disparities may be considered) (emphasis added) (citation omitted)). Danilovich and Zemlyansky were not similarly situated. Danilovich had a

- 9 -

higher criminal history category based upon his prior securities fraud and money laundering convictions, had continued his criminal activities following his arrest, and was convicted of more counts than Zemlyansky.

\* \* \*

We address a collateral matter related to Danilovich's attorney's conduct in this appeal. The district court below found that the attorney had a direct conflict because he had previously represented Katsman in another criminal proceeding that was substantially related to this case and because Katsman had not waived his right to conflict-free counsel. In seeking permission in this Court to represent Danilovich in this appeal, however, Danilovich's counsel represented that he would not attack Katsman's character or credibility on appeal. *See* Decl. of Eric M. Creizman, Dkt No. 28 ¶¶ 24-25 ("Indeed, there is no reason to challenge Mr. Katsman's credibility or attack his character on appeal"). But, as described above, he did just that, squarely contradicting his prior representation. This conduct is most troubling.

We have considered Danilovich's remaining arguments and find them to be without merit. For the reasons set forth above, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court