24-3232 (L)
*U.S. v. Santibanez Cardona, Montoya Garcia*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand twenty-five.

PRESENT:

> BETH ROBINSON,
> SARAH A. L. MERRIAM,
>     *Circuit Judges*,
> SIDNEY H. STEIN,[*]
>     *District Judge.*

_____

UNITED STATES OF AMERICA

    *Appellee*,

       v.                                 Nos.  24-3232 (Lead),
                                                  24-3293 (Con)

JUAN FELIPE SANTIBANEZ CARDONA,
REHINNER ANTONIO MONTOYA GARCIA,

_____

[*] Judge Sidney H. Stein, of the United States District Court for the Southern District of New York, sitting by designation.

*Defendants-Appellants,*

OSCAR HENAO-MONTOYA, OLMES DURAN-IBARGUEN,

*Defendants.*†

_____

| | |
|---|---|
| FOR APPELLEE: | MATTHEW J.C. HELLMAN, Assistant United States Attorney (Sam Adelsberg, David J. Robles, Chelsea L. Scism, and Michael D. Maimin, Assistant United States Attorneys, *on the brief*), *for* Jay Clayton, United States Attorney for the Southern District of New York, New York NY. |
| FOR DEFENDANT-APPELLANT JUAN FELIPE SANTIBANEZ CARDONA: | JOHN BUZA, Konta, Georges, and Buza, P.C., New York, NY. |
| FOR DEFENDANT-APPELLANT REHINNER ANTONIO MONTOYA GARCIA: | COLLEEN P. CASSIDY, Federal Defenders of New York, Inc., New York, NY. |

Appeal from judgments of the United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*).

---

† The Clerk's office is respectfully directed to amend the caption as reflected above.

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the sentences are **VACATED** and the cases are **REMANDED** for reassignment and resentencing before a new district judge.

Juan Felipe Santibanez Cardona and Rehinner Antonio Montoya Garcia appeal from judgments convicting them, following guilty pleas, of conspiring to import cocaine in violation of 21 U.S.C. §§ 960, 963. Defendants were sentenced principally to prison terms of fifteen and twenty years, respectively. On appeal, they argue that the district court's comments at their sentencings created the appearance that they were sentenced based on their national origin. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to vacate the sentences and remand for resentencing.

"A defendant's race or nationality may play no adverse role in the administration of justice, including at sentencing."[1] *United States v. Leung*, 40 F.3d 577, 586 (2d Cir. 1994). "Reference to national origin and naturalized status is permissible, so long as it does not become the basis for determining the sentence." *United States v. Jacobson*, 15 F.3d 19, 23 (2d Cir. 1994). However, proof of actual

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

bias is not necessary to warrant vacatur of the sentence. "[E]ven the appearance that the sentence reflects a defendant's race or nationality will ordinarily require a remand for resentencing" because "justice must satisfy the appearance of justice." *United States v. Kaba*, 480 F.3d 152, 156 (2d Cir. 2007). Because our concern is the "appearance of justice," we have instructed that where vacatur is warranted the task of resentencing should ordinarily be assigned to a different judge even where we are confident—as we are here—that the original sentencing judge could fairly sentence on remand. *See, e.g.*, *Leung*, 40 F.3d at 587.

We have consistently vacated sentences where the district court referred to "the publicity a sentence might receive in the defendant's ethnic community or native country and explicitly stated its intention to seek to deter others sharing that national origin from violating United States laws in the future." *Kaba*, 480 F.3d at 157; *see e.g.*, *United States v. Vasquez-Drew*, No. 20-3195, 2023 WL 2359966, at *1 (2d Cir. March 3, 2023) (summary order) ("It is important . . . that the people in Bolivia understand the kind of sentences that are potentially imposed here from engagement in activity to send cocaine into America."); *United States v. Arslanouk*, 853 F. App'x 714, 720–21 (2d Cir. 2021) (summary order) (The "sentence would send a message that Russian organized crime that seeks to come to the shores of

the United States will be dealt with, with the power of our criminal justice system."); *Leung*, 40 F.3d at 585 ("The purpose of my sentence here is to punish the defendant and to generally deter others, particularly others in the Asiatic community because this case received a certain amount of publicity in the Asiatic community, and I want the word to go out from this courtroom that we don't permit dealing in heroin and . . . if people want to come to the United States they had better abide by our laws.").

Whether the district court improperly considered a defendant's national origin is a question of law we review *de novo*. *United States v. Carreto*, 583 F.3d 152, 159 (2d Cir. 2009).

### I.     Santibanez Cardona Sentencing

Before imposing sentence, the district court explained that it "considered the need to deter criminal conduct." Santibanez Cardona App'x 40. It continued:

> General deterrence, how do we deter people generally from committing crimes — in your case that would mean how do we send the message to Colombia and narco traffickers to stop, to quit importing narcotics into the United States — and specific deterrence is how do we deter you from committing another crime.
> In terms of general deterrence, I think it is incredibly important for the word to get back to Colombia: You engage in this sort of drug trafficking and you get caught and you get brought back to the

5

> United States, you're going to spend a very long time in prison. We take this crime very seriously.

Santibanez Cardona App'x 41.[2]

These remarks create "a sufficient risk that a reasonable observer . . . might infer, however incorrectly," that his national origin played a role in determining his sentence. *Leung*, 40 F.3d at 586–87. Though our review of the sentencing transcript leaves us confident that the district court harbored no actual bias against Santibanez Cardona, our precedent nevertheless requires us to remand for resentencing.

## II.     Montoya Garcia Sentencing

In evaluating whether a district court's statements could improperly suggest that a defendant's national origin is responsible in any way for the sentence, we may consider the extent to which the court was responding to arguments raised by the defense. *Carreto*, 583 F.3d at 159–160. Here, however, we reject the Government's contention that the court's statements about Colombia and Colombians were solely responsive to Montoya Garcia's arguments that a

---

[2] In our citations to transcripts, we correct obvious misspellings, such as "Columbia" to "Colombia."

6

person "who can put their hands on 8 kilograms of cocaine" in Colombia is not "a major trafficker." Montoya Garcia App'x 150.

After defense counsel finished his arguments about general deterrence and acknowledged that "it was a motivating factor in Santibanez's sentence," the court stated:

> It's a motivating factor in the sense that Colombians need to understand they need to quit exporting cocaine into the United States, and if they get caught, they will do a lot of time. I mean, I don't know how else we deal with the Colombian problem.

Montoya Garcia App'x 159. The Government then followed with a request for clarification from the court that it was "not in any way sentencing the defendant based on his nationality," to which the court simply responded, "Oh, no." *Id.* at 160.

During the court's explanation of the sentence, it added: "I believe it is important for the message to get back to the drug traffickers in South America, and Colombia as well, to stop importing cocaine into the United States. The United States takes this seriously, and it's got to stop." *Id.* at 174. After the government again asked the court to "clarify that the defendant's nationality had no bearing" on the sentence, the court responded that the "sentence would have

been the same if it was entirely based on the activities with the informant as part of the activities in the conspiracy." *Id.* at 179.

The Government's attempts to cure the "appearance that the sentence reflects a defendant's race or nationality" did not do so. *Kaba*, 480 F.3d at 156. These statements by the court are, in context, insufficient to dispel the "risk that a reasonable observer" might infer that Montoya Garcia's national origin played a role in determining his sentence. *Leung*, 40 F.3d at 586–87.

\* \* \*

Though we note no indication of actual bias by the district judge in sentencing these defendants, our "prophylactic rule" requires us to remand to a different judge for resentencing. *Kaba*, 480 F.3d at 159. "[T]he appearance of justice is better satisfied by" such reassignment. *Leung*, 40 F.3d at 587. We therefore **VACATE** both defendants' sentences and **REMAND** these cases to the district court for reassignment and resentencing before a new district judge.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8