**UNITED STATES of America,
Appellee,**

v.

**Christian SILVERIO, also known as Grimy, Defendant–Appellant.**

**Docket No. 02–1376.**

United States Court of Appeals,
Second Circuit.

Argued April 7, 2003.

Decided July 3, 2003.

Louis M. Freeman, New York, N.Y. (Freeman, Nooter & Ginsberg, of counsel), for Defendant–Appellant.

Cecil C. Scott, Assistant United States Attorney, Brooklyn, N.Y. (Roslynn R. Mauskopf, United States Attorney, and Peter A. Norling, Assistant United States Attorney, of counsel), for Appellee.

Before WALKER, Chief Judge, OAKES and WINTER, Circuit Judges.

PER CURIAM.

This case raises the question whether intent is required to establish the interstate nexus necessary for a robbery conviction under the Hobbs Act. The defendant, Christian Silverio, was convicted of attempted robbery by the United States District Court for the Eastern District of New York, Jack B. Weinstein, *Judge,* on evidence relating to a robbery of a Manhattan doctor in his home. On appeal, Silverio argues that there is insufficient evidence to confer federal jurisdiction over his crime under the Hobbs Act because he did not know that the robbery affected interstate commerce. We find that the evidence sufficiently establishes that the robbery was directed at money obtained in interstate commerce and that Silverio's individual intent is not determinative. Accordingly, we affirm.

## BACKGROUND

Viewed in the light most favorable to the government, *see United States v. Jamison,* 299 F.3d 114, 115 (2d Cir.2002), the follow-

ing evidence was presented at Silverio's trial.

On the night of February 26, 1998, Silverio and two other men forced entry into the home of Dr. Scott Kessler, an ear, nose and throat doctor with a celebrity clientele. The men tied and blindfolded Dr. Kessler and his family, threatened them with weapons, and stayed for several hours before leaving with some money and jewelry.

The two assailants with Silverio that night, Angel Maldonado and Julio Silverio, who is the defendant's brother, had learned about Dr. Kessler from Jose Negron, the doorman at Kessler's residence. Negron had a history of committing violent robberies with Maldonado and Julio Silverio, and, based on Negron's belief that Dr. Kessler kept a substantial amount of money in his apartment from his medical practice across the street, Negron proposed robbing Dr. Kessler at home. Because Negron could not participate in the actual robbery for fear of being identified by the Kesslers, Julio Silverio recruited his brother, Christian, as the third assailant a few days before the robbery.

On February 26, the defendant, his brother, Maldonado, and Negron went to the Kesslers' apartment building, armed with two guns. After gaining entry to the building through Negron, who stayed downstairs on his doorman shift, the three assailants made their way to the Kesslers' door, where they announced a flower delivery. When Dr. Kessler opened the door, the three men rushed into the apartment and, after a struggle, brought Dr. Kessler, his wife, and his son to a couch, where they were tied and blindfolded.[1]

Maldonado then demanded "the money" that he claimed he knew was in the house.[2] When Dr. Kessler's son offered $300 from his piggy bank, Maldonado responded that he wanted the hundreds of thousands of dollars that were supposed to be there. He also stated that they knew Kessler was "a big shot doctor across the street" who traveled in limousines and treated celebrity patients. When the Kesslers denied having such amounts of cash in their home, the men refused to believe them and continued to demand that the money be produced. They also demanded Dr. Kessler's financial records. Dr. Kessler explained that his business proceeds were in a business account, which he could not deplete without consent from his partner, who was out of town. When the men sought to go to his office across the street to get money, he told them that there was no money there other than petty cash. As time passed, the assailants gradually lowered the amount of money demanded.

Negron, with whom Maldonado kept in touch by cell phone, insisted that the money was in the apartment and directed the assailants to kidnap the Kessler children if it was not turned over. After some further threats and searches of the apartment, the assailants took the Kesslers' ATM cards and Julio Silverio left to withdraw as much cash as he could. Finally, as the end of Negron's shift approached, the defendant and Maldonado left the apartment, taking the valuables they had found and the $300 from the son's piggy bank.

The defendant was arrested in April 2000 and charged with conspiring to obstruct commerce by robbery and with attempt to do so in violation of 18 U.S.C.

---

1. The Kesslers' daughter was allowed to continue sleeping in her room, undisturbed.

2. This evidence came from Maldonado's testimony at the defendant's trial. Maldonado testified pursuant to a cooperation agreement with the government.

§ 1951. He was also charged with aiding and abetting the use and carrying of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). At trial, the government did not produce evidence that Silverio knew about the Kesslers before the night of the robbery. Instead, Maldonado testified that only he and Julio Silverio participated in the planning of the robbery with Negron. The trial court consequently dismissed the conspiracy charge, and Silverio was convicted by a jury of the remaining two charges.

## DISCUSSION

■ On appeal, Silverio argues that the evidence at his trial did not establish that he was aware that the object of the Kessler robbery was the proceeds of Dr. Kessler's business and that, therefore, the interstate nexus required for jurisdiction under the Hobbs Acts was not satisfied. Because Silverio claims that there was insufficient evidence to support his conviction, he faces a substantial burden on appeal. *See United States v. Fabian,* 312 F.3d 550, 554 (2d Cir.2002). Although our review is *de novo, see United States v. Henry,* 325 F.3d 93, 103 (2d Cir.2003), we must view the contested evidence " 'in the light most favorable to the government and construe all possible inferences in its favor.' " *Fabian,* 312 F.3d at 554 (quoting *United States v. Badalamenti,* 794 F.2d 821, 828 (2d Cir.1986)).

■ The Hobbs Act allows for federal prosecution of the typically state law crime of robbery when such a robbery interferes with interstate commerce. Specifically, the Hobbs Act criminalizes conduct which "in any way or degree obstructs, delays, or affects commerce ... by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." 18 U.S.C. § 1951(a) (2002). We have consistently held that only a *de minimus* showing is necessary to establish the interstate nexus required for Hobbs Act jurisdiction. *See Fabian,* 312 F.3d at 554 (citing cases). Indeed, "it is the law in our circuit that '[i]f the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act.' " *United States v. Perrotta,* 313 F.3d 33, 36 (2d Cir.2002) (quoting *Jund v. Town of Hempstead,* 941 F.2d 1271, 1285 (2d Cir.1991)).

In our recent decision in *Perrotta,* where we held that a robbery victim's employment at a company engaged in interstate commerce was not adequate, standing alone, to satisfy the interstate nexus requirement, we envisioned several "instances where a robbery or extortion of [such] an employee ... would likely support Hobbs Act jurisdiction." 313 F.3d at 37. Relying on precedent set forth in numerous cases, we stated that:

> The jurisdictional nexus could be satisfied by showing that the victim directly participated in interstate commerce; that the victim was targeted because of her status as an employee at a company participating in interstate commerce; that the harm or potential harm to the individual would deplete the assets of a company engaged in interstate commerce; that the crime targeted the assets of a business rather than an individual; or that the individual was extorted of a sum so large, or targeted in connection with so many individuals, that the amount at stake cumulatively had some effect on interstate commerce[.]

*Id.* at 37–38 (internal citations omitted).

■ Applying our reasoning in *Perrotta* to Silverio's case, we find that the evidence of the Kessler robbery, viewed in the light

most favorable to the government, was sufficient to demonstrate an interstate nexus because Dr. Kessler was a direct participant in interstate commerce through his business of treating a worldwide celebrity clientele, because the robbery would have depleted the assets of Dr. Kessler's business, and because the robbery targeted the assets of his business rather than his personal property.

Silverio argues, however, that he did not know that the object of the robbery was Dr. Kessler's business proceeds. Silverio relies on our decision in *Fabian*, in which we found that Fabian's belief that he was robbing first a loan shark and then, in a second incident, the proceeds of an interstate drug deal, was sufficient to establish Hobbs Act jurisdiction even though Fabian's belief about both robberies turned out to be mistaken. *See* 312 F.3d at 555–56. We held there that "what is relevant is what Fabian believed," and, because he believed that his robberies targeted business proceeds that fell within the scope of the Hobbs Act, the fact that they did not actually do so was not a bar to liability. *Id.* at 555. Silverio claims that, by this language, *Fabian* created an intent element for the interstate nexus inquiry, requiring the government to prove that Silverio intended to rob Dr. Kessler of the proceeds of his medical practice.

■ We reject Silverio's argument on the basis that his interpretation of *Fabian* is incorrect. We did not conclude in that case that intent or knowledge is an element necessary to establish an effect on interstate commerce; rather, we found that when circumstances make such an effect an impossibility, a robber's belief about the object of the robbery is sufficient to establish the interstate nexus. *See* 312 F.3d at 555–56. In other words, in the absence of an actual effect on interstate commerce, a defendant's belief about

the nature of his crime may be determinative. But when, as here, ample effects on interstate commerce are demonstrated, the state of mind of the defendant is not relevant.

We know of no court that has an intent requirement for Hobbs Act prosecutions such as that suggested by Silverio, and we refuse to create one in this circuit. Instead, we reiterate today what we have held many times over in our prior cases: that in order to establish jurisdiction under the Hobbs Act, the government must demonstrate the effect of a defendant's *conduct* on interstate commerce. *See, e.g., Perrotta*, 313 F.3d at 36; *Jamison*, 299 F.3d at 118. When such a showing has been made, as it was in Silverio's case, the jurisdictional element of a Hobbs Act prosecution is satisfied.

We have considered Silverio's remaining arguments and find them to be without merit. We therefore affirm Silverio's conviction on both counts.

### CONCLUSION

In light of the foregoing, we affirm the judgment of the district court.