**UNITED STATES of America,**
**Appellee,**

v.

**Alex ORTEGA, also known as "Alex," also known as "Samuel Luguis," also known as "Marino Ortega," Defendant–Appellant.**

**No. 02–1075.**

United States Court of Appeals,
Second Circuit.

Aug. 13, 2003.

James E. Neuman, New York, N.Y. (Lee A. Ginsberg, Freeman, Nooter and Ginsberg, New York, NY, on the brief), for Appellant.

Daniel R. Margolis, Assistant United States Attorney for the Southern District of New York, New York, N.Y. (Jane A. Levine, Assistant United States Attorney, Meir Feder, Assistant United States Attorney, James B. Comey, United States Attorney, on the brief), for Appellee.

Present: WALKER, Chief Judge, MINER, and McLAUGHLIN, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of said district court with respect to defendant Alex Ortega be, and it hereby is, **AFFIRMED.**

Defendant Alex Ortega appeals from so much of a judgment of conviction and sentence as pertains to the offense of conspiracy to commit a robbery affecting interstate commerce, in violation of the Hobbs Act, 18 U.S.C. § 1951, entered after a jury trial in the United States District Court for the Southern District of New York (Jones, *J.*). The District Court rejected Ortega's contentions that the evidence failed to establish the interstate commerce element of the Hobbs Act and that the jury instructions did not correctly define the interstate commerce element of the Hobbs Act.

Ortega's conviction resulted from his involvement in a conspiracy to rob $80,000 from the home of a Bronx businessman. In or about November 1995, Ortega and his fellow conspirators received a tip that a businessman who "sold tires" and "lent money," "had $80,000 in his house." The victim owned and operated a store in the Bronx that sold and repaired tires, including those produced by Yamaha, Firestone, and B.F. Goodrich, and sold car batteries purchased from outside New York State. In addition to his tire business, the victim also illegally sold rum that was produced outside New York State and illegally loaned money to people at an interest rate of thirty-five percent. The cash generated from these illegal side businesses generally was hidden at the victim's tire store.

On November 10, 1995, Ortega and his coconspirators accosted the victim and his son at gunpoint outside their home, escorted them inside where their family was waiting for them to come home from work, and demanded that the victim give them the $80,000. After the victim responded that the money was at his tire store, the robbers physically assaulted the victim and his wife and threatened to harm their children. Once the robbers realized that the $80,000 was not in the house, they fled with $220, some jewelry, and a VCR.

■ Relying on case law from outside this Circuit, Ortega principally argues that the evidence presented to the jury was legally insufficient to support his Hobbs Act conviction because the Government failed to prove that he conspired to commit a robbery that would have the requisite effect on interstate commerce. We have repeatedly held that only a de minimus showing is required to establish the interstate nexus required for Hobbs Act jurisdiction. *See, e.g., United States v. Fabian,* 312 F.3d 550, 554 (2d Cir.2002). Thus, " '[i]f the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act.' " *United States v. Perrotta,* 313 F.3d 33, 36 (2d Cir.2002) (quoting *Jund v. Town of Hempstead,* 941 F.2d 1271, 1285 (2d Cir.1991)).

More recently, in *United States v. Silverio,* 335 F.3d 183 (2d Cir.2003) (per curiam), we affirmed a Hobbs Act conviction arising out of facts that are virtually on all fours with the facts in this case. In *Silverio,* the defendant and two others forced their way into the apartment of a physician with the intent of robbing him after they had received a tip from the doorman in the apartment building that the physician kept a substantial amount of cash from his medical practice there. *Id.* After realizing that the cash they were looking for was not in the apartment, the robbers left with $300 in cash and two ATM cards. *Id.* On appeal, we affirmed the defendant's Hobbs Act conviction, concluding that, when "viewed in the light most favorable to the [G]overnment, [there] was sufficient evidence to demonstrate an interstate nexus." *Id.* at 187. In particular, we relied on the facts that, inter alia, the doctor "was a direct participant in interstate commerce through his business of treating a worldwide celebrity clientele ... and because the robbery targeted the assets of his business rather than his personal property." *Id.* at 187. Moreover, while recognizing that, "in the absence of an actual effect on interstate commerce, a defendant's belief about the nature of his crime may be determinative," when (as was the case in *Silverio*) "ample effects on interstate commerce are demonstrated, the state of mind of the defendant is not relevant." *Id.* at 187. Accordingly, because the the Government has amply demonstrated the effects that Ortega's intended robbery of the $80,000 thought to be derived from his victim's tire business would have had on interstate commerce, his conviction must stand.

■ Finally, Ortega argues in the alternative that the District Court erred in declining to adopt his proposed instruction requiring the jury to find a "substantial effect" on interstate commerce in the case of a robbery of an individual. In support of his argument, Ortega invites us to import a rule that he claims was established by the Sixth Circuit in *United States v. Min Nan Wang,* 222 F.3d 234 (6th Cir. 2000). *Wang* involved the prosecution of a restaurant owner who was robbed in her home of $4200. Twelve hundred dollars belonged to the restaurant, and $900 of that amount was to be deposited into the restaurant's bank account. In reversing the Hobbs Act convictions of the defendants, the Sixth Circuit found the proof lacking because "[t]he Government made no showing of a substantial connection between the robbery and the restaurant's business." *Id.* at 240. The Court there established a rule that "when the Government seeks to satisfy the Act's jurisdictional nexus by showing a connection between an individual victim and a business engaged in interstate commerce, that connection must be a substantial one – not one that is fortuitous or speculative." *Id.* at 239–40.

Based on the foregoing, Ortega contends that where "the [G]overnment alleges a robbery of an individual at his home, the appropriate standard requires proof that the robbery had not just a minimal effect, but a substantial effect on interstate commerce." This contention is based on a misreading of *Wang*, which requires only a substantial nexus between an individual victim and a business engaged in interstate commerce. There is no requirement in that case that the effect on interstate commerce be anything other than minimal. While our conclusion in that case may well have been different based on its factual underpinnings, we have no quarrel with the law applied by the *Wang* court in regard to the interstate nexus element of the Hobbs Act. That court noted with approval the district court's determination that the effect on interstate commerce "did not rise even to the level of de minimis," *id.* at 240 n. 2, stating "[t]he Government made no showing of a substantial connection between the robbery and the restaurant's business, and the district court held that 'there is no evidence of an effect on interstate commerce.' In the absence of such a showing, there is no realistic probability that the aggregate of such crimes would substantially affect interstate commerce," *id.* at 240 (footnote omitted).

In point of fact, we have joined with the *Wang* court, among others, "in drawing a distinction between the extortion of an individual and the extortion of a business for the purposes of establishing Hobbs Act jurisdiction." *Perrotta*, 313 F.3d at 36. We there reversed the defendant's conviction because we were "persuaded that the [G]overnment must show something more than the victim's employment at a company engaged in interstate commerce to support Hobbs Act jurisdiction." *Id.* In any event, to the extent that *Wang* can be read to require more than a de minimis showing that interstate commerce is affected by the

activities proscribed by the Hobbs Act, we reject it. Accordingly, the District Court's jury instruction was entirely proper.

We have considered Ortega's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the District Court is **AFFIRMED.**