17-689
*United States v. Rose*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2017

(Argued: March 28, 2018         Decided: May 30, 2018)

Docket No. 17-689
_____

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

FLOYD ROSE,

*Defendant-Appellant,*

JAMES ARBERRY, AKA STANLEY WOODS,

*Defendant.*

_____

B e f o r e:

KATZMANN, *Chief Judge*, WALKER, *Circuit Judge*, and Bolden, *District Judge*.[*]

_____

[*] Judge Victor A. Bolden, United States District Court for the District of Connecticut, sitting by designation.

_____

Defendant-appellant Floyd Rose appeals the order of the United States District Court for the Southern District of New York (Oetken, *J.*) denying Rose's motion to withdraw his plea of guilty to one count of Hobbs Act robbery, 18 U.S.C. § 1951(a). Rose argues, for the first time on appeal, that he is legally innocent because his robbery lacked a *de minimis* effect on interstate commerce, as the Hobbs Act requires. He thus asserts that the district court committed plain error by denying his motion to withdraw his plea. We disagree and conclude that Rose's robbery falls within the scope of the Hobbs Act because Rose targeted the assets of a business engaged in interstate commerce. We therefore **AFFIRM** the judgment of the district court.

_____

FRANK J. BALSAMELLO (Anna M. Skotko, *on the brief*), Assistant United States Attorneys, *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

DEVIN MCLAUGHLIN, Langrock Sperry & Wool, LLP, Middlebury, VT, *for Defendant-Appellant*.

_____

KATZMANN, *Chief Judge*:

Defendant-appellant Floyd Rose appeals the order of the United States District Court for the Southern District of New York (Oetken, *J.*) denying Rose's motion to withdraw his plea of guilty to one count of Hobbs Act robbery, 18 U.S.C. § 1951(a). We now consider whether forcing someone to withdraw money from an ATM and then stealing the money has a sufficient effect on interstate

commerce to support jurisdiction under the Hobbs Act. Concluding that it does, we affirm the judgment of the district court.

## BACKGROUND[1]

At around 9:20pm on June 10, 2015, a soon-to-be robbery victim deposited money into his account at a Citibank located on West 32nd Street in Manhattan. A short time later, defendant Floyd Rose asked the victim for directions to a church. James Arberry (Rose's codefendant) approached and said he could help them find the church. As they were walking, Arberry placed a hard object against the victim's back and told him that he was being robbed. Arberry and Rose, however, did not take any money or property from the victim's person. Instead, with Rose waiting on a bench, Arberry and the victim went to the Citibank, where the victim used an ATM to withdraw $900 from his account. Arberry and the victim returned to the bench, where the victim gave Rose the $900. The victim was then released.

At a hearing on June 24, 2016, Rose pled guilty, pursuant to a plea agreement, to one count of Hobbs Act robbery. As Rose concedes on appeal, the

[1] The factual summary is drawn from Rose's Presentence Investigation Report, whose recitation of the facts is not disputed by the parties.

district court held a "thorough" plea colloquy that "address[ed] all the required aspects of Rule 11." Br. of Appellant at 3. During the hearing, Rose stated that "[o]n June 10, 2015, [he], with another, took a person's property by force and made them withdraw money from an ATM machine." App. 32. The government agreed that that was a sufficient factual basis for the plea and "proffer[ed] that the withdrawal from the ATM machine was from a bank that does business in interstate commerce." *Id.* The court accepted the plea.

On August 4, 2016, Rose, acting *pro se*, sent a letter to the district court claiming that his attorney, Robert Soloway, had coerced him into pleading guilty and seeking to withdraw his guilty plea. On August 23, 2016, Rose submitted a *pro se* motion and affidavit to the same effect. The affidavit asserted in passing that Rose was legally innocent because he did not use "force or violence" during the robbery. The district court appointed new counsel for Rose and held an evidentiary hearing at which the sole witness was Rose's original counsel. Soloway testified that he or an associate had met with Rose multiple times, that their relationship was uncontentious, that he thought the government had a "formidable" case, and that Rose had instructed him to get the best possible deal. *Id.* at 46–67. The district court credited Soloway's testimony, found that Rose had

4

knowingly and voluntarily pleaded guilty, and denied Rose's motion to withdraw his guilty plea. The district court sentenced Rose to a 60-month term of imprisonment, substantially below his Guidelines range of 210 to 262 months. Judgment was entered the following day. This appeal timely followed.

## DISCUSSION

On appeal, as below, Rose argues that the district court erred in refusing to allow him to withdraw his guilty plea. "[A] defendant may withdraw a plea of guilty after it is accepted, but before sentencing, only if the defendant can show a 'fair and just reason for requesting the withdrawal.'" *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016) (quoting Fed. R. Crim. P. 11(d)(2)(B)). "To determine whether a defendant has met this burden, a court should consider: '(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea.'" *United States v. Carreto*, 583 F.3d 152, 157 (2d Cir. 2009) (quoting *United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir. 2004) (per curiam)). "The standard for withdrawing a guilty plea is stringent because

5

society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *Schmidt*, 373 F.3d at 103 (internal quotation marks omitted).

Rose takes a different tack on appeal than he did in the district court, and no longer disputes that his plea was knowing and voluntary. He instead argues that he is legally innocent of Hobbs Act robbery because the robbery had an insufficient effect on interstate commerce.

Ordinarily, "[w]e review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion and any findings of fact in connection with that decision for clear error." *Rivernider*, 828 F.3d at 104. However, because Rose's legal innocence argument is raised for the first time on appeal, we review for plain error. *See United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006). To prevail, Rose must "establish the existence of (1) an error; (2) that is plain; (3) that affects substantial rights; (4) and that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Jones*, 878 F.3d 10, 15 (2d Cir. 2017) (internal quotation marks omitted).

We find that the district court committed no error, let alone an error that was plain and affected Rose's substantial rights. The Hobbs Act provides as follows:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). Because "[t]he Hobbs Act prohibits robberies that affect interstate commerce 'in any way or degree,'" the "required showing of an effect on interstate commerce is *de minimis*." *United States v. Parkes*, 497 F.3d 220, 230 (2d Cir. 2007) (quoting 18 U.S.C. § 1951(a)). "[I]t is the law in our circuit that '[i]f the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act.'" *United States v. Silverio*, 335 F.3d 183, 186 (2d Cir. 2003) (per curiam) (quoting *United States v. Perrotta*, 313 F.3d 33, 36 (2d Cir. 2002)).

We have found the jurisdictional element satisfied when the victim of a robbery is an individual, as opposed to a business, in the following circumstances:

> (i) where the victim directly participated in interstate commerce; (ii) where the defendant targeted the victim "because of her status as an employee at a company participating in interstate commerce"; (iii) where the assets of a company engaged in interstate commerce were, or would have been, depleted as a result of the harm or potential harm, respectively, to the individual victim; or (iv) where the defendant targeted the assets of a business engaged in interstate commerce rather than an individual.

*United States v. Wilkerson*, 361 F.3d 717, 729 (2d Cir. 2004) (quoting *Perrotta*, 313 F.3d at 37–38). But "where the only connection to interstate commerce is that the victim works for a company engaged in interstate commerce, the link between the crime and interstate commerce is simply too attenuated to support federal Hobbs Act jurisdiction." *Perrotta*, 313 F.3d at 36.

Rose argues that his robbery of an individual victim lacked even a *de minimis* effect on interstate commerce. According to Rose, the victim was not himself engaged in interstate commerce, nor was the victim targeted because of his status as an employee of a firm engaged in interstate commerce. The money belonged to the victim, not Citibank, and thus no assets of a firm engaged in

8

interstate commerce were depleted. Similarly, Rose argues that he was not targeting a firm's assets, but the individual victim's. Accordingly, although Rose concedes that he committed a state-law crime, he contends that did not commit a federal robbery.

We conclude that Rose's robbery falls within the scope of the Hobbs Act because Rose "targeted the assets of a business engaged in interstate commerce rather than an individual." *Wilkerson*, 361 F.3d at 729.[2] Rose did not rob the victim of property on his person. Rose instead targeted the funds held in the victim's account at Citibank. These assets were the property of Citibank at the time that Rose initiated the robbery. *See Shaw v. United States*, 137 S. Ct. 462, 466 (2016) ("When a customer deposits funds, the bank ordinarily becomes the owner of the funds and consequently has the right to use the funds as a source of loans that help the bank earn profits (though the customer retains the right, for example, to withdraw funds)."). Accordingly, although the victim withdrew the funds from an ATM and physically handed them to Rose (under implicit threat of violence), the target of the robbery remained the same—Citibank. Indeed,

---

[2] In coming to this conclusion, we do not decide whether Rose's robbery affected interstate commerce under the other factors set forth in *Perrotta*. *See* 313 F.3d at 37–38.

Rose admitted as much in his plea agreement by consenting to pay restitution of the stolen money *directly to Citibank*, not to the victim. Gov't Add. 2 ("The defendant further agrees to make restitution in the amount of $1,900 to Citibank . . . .").[3]

We are further unpersuaded by the Fifth Circuit's decision in *United States v. Burton*, upon which Rose heavily relies. 425 F.3d 1008 (5th Cir. 2005). In *Burton*, the Fifth Circuit held that where a robber forces someone to withdraw money from an ATM and then steals the money, the robber has not taken anything "belonging to, or in the care, custody, control, management, or possession of" a bank for the purposes of the federal bank fraud statute. *Id.* at 1011–12 (quoting 18 U.S.C. § 2113(a) (emphasis omitted)). The court reasoned that the bank no longer had custody over the funds after the withdrawal; thus, when the robber took the $150 that the victim withdrew, he robbed only the victim. The court also reversed the defendant's Hobbs Act conviction, summarily agreeing without discussion that it must fall because the bank robbery conviction fell. *Id.* at 1012.

---

[3] Although Rose only pled guilty to one count of robbery of $900, he was originally charged with two robberies, and the $1,900 restitution reflects amounts stolen in both.

10

We decline to follow *Burton* to the extent that it concluded that a forced

ATM withdrawal, by itself, cannot support Hobbs Act jurisdiction. The mere fact

that the bank did not have "custody" over the funds at the precise moment that

the robber stole the victim's money (the key question for bank robbery, under the

*Burton* framing) does not mean that the crime lacked a *de minimis* effect on

interstate commerce (the key question for Hobbs Act robbery). For the reasons

set forth above, we find that Rose's robbery had a sufficient impact on interstate

commerce to establish Hobbs Act jurisdiction.[4] Rose accordingly has failed to

assert his legal innocence, and the district court committed no error by denying

his motion to withdraw his guilty plea. *See Carreto*, 583 F.3d at 157.

---

[4] Rose also unpersuasively relies on our decision in *Silverio*, where we found that the jurisdictional element of the Hobbs Act was satisfied where robbers broke into a celebrity doctor's house and stole $300. 335 F.3d at 185-87. Rose argues that the *Silverio* Court doubted that the ATM robbery could establish jurisdiction because the Court noted that one of the robbers took the doctor's ATM card and "left to withdraw as much cash as he could," *id.* at 185, but did not rely on this fact in its jurisdictional analysis. The fact that the *Silverio* Court did not separately analyze whether the ATM robbery was sufficient, however, proves little because the Court found that jurisdiction was satisfied for several other reasons. *See id.* at 187. It therefore was not necessary for the Court to address the issue.

## CONCLUSION

We have considered Rose's remaining arguments and conclude they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.