22-2712-cr
*United States v. Pandrella*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8ᵗʰ day of April, two thousand twenty-four.

Present:

> EUNICE C. LEE,
> SARAH A. L. MERRIAM,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

v.                                                                                  22-2712-cr

ANTHONY PANDRELLA,

> *Defendant-Appellant.*

---

For Appellee:                                M. KRISTIN MACE (Jo Ann M. Navickas, Matthew R. Galeotti, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

For Defendant-Appellant: JONATHAN SAVELLA (James R. Froccaro Jr., Law Office of James R. Froccaro, Jr., Port Washington, NY, *on the brief*), New York, NY.

Appeal from an April 27, 2023 amended judgment of the United States District Court for the Eastern District of New York (Brodie, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Anthony Pandrella ("Pandrella") appeals from an amended judgment entered following a jury trial at which he was convicted of three counts: one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); one count of using and carrying a firearm during and in relation to the robbery, in violation of 18 U.S.C. § 924(c)(1)(A); and one count of using the firearm to knowingly and intentionally cause a person's death in the perpetration of the robbery, in violation of 18 U.S.C. § 924(j)(1). These convictions stem from the robbery and murder of Vincent Zito ("Zito"), which occurred on October 26, 2018. Pandrella timely appealed his conviction.

On appeal, Pandrella argues that: (1) the government failed to establish Hobbs Act jurisdiction by not presenting sufficient evidence of the robbery's effect on interstate commerce; (2) the district court improperly excluded Pandrella's statements to a government witness as inadmissible hearsay; and (3) the district court erred by admitting "other acts" evidence of Pandrella's association with purported criminal figures. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

2

# BACKGROUND

For decades, Zito operated a loansharking business out of his home. He stored cash from his loansharking in boxes around the house, and customers came to his residence to borrow money. He charged a weekly interest rate of three percent, although he sometimes gave lower rates to individuals he knew well. To protect his business, Zito had surveillance cameras that recorded his home's entrances and guns hidden in the areas where he met his customers.[1] When Zito sensed he was under law enforcement scrutiny—i.e., "hot"—he would bring his cash and guns to either Pandrella, his best friend, or a neighbor for safekeeping.

About a year before Zito's death, in 2017, Pandrella warned Zito that Zito was "hot." In response, Zito gave $750,000 to Pandrella to hold until things calmed down. Approximately two months before Zito's death, Zito asked Pandrella for the money back, but Pandrella was unable to return the full amount. Zito was "irate." Appellant's App'x at 151. The relationship between the two deteriorated as Pandrella remained unable to return the money.

On October 25, 2018, Zito told multiple witnesses that he was expecting to meet with Pandrella the next day. Specifically, he told his son, Joseph Zito, that he was expecting Pandrella to bring him a substantial amount of money at the meeting. The following day, October 26, 2018, at approximately 2:43 p.m., Zito's grandson discovered Zito's deceased body after getting home from school. At the crime scene, police officers recovered a revolver along with two discharged bullets, one from Zito's head and one from the floor near his body. Additionally, four luxury watches which had been given to Zito as collateral for a $50,000 loan were missing.

---

[1] Pandrella asserts that the security cameras "had been blind to two whole sides of the House." Appellant's Br. at 6. However, the evidence adduced at trial showed that the areas not covered by surveillance did not contain working entrances.

In the window of time in which Zito was last seen alive and before his grandson returned home, Zito's surveillance system showed only a single person entering and leaving the home: Pandrella. Specifically, Pandrella had arrived at approximately 8:10 a.m. and left at approximately 10:25 a.m. This period corresponded with the time Zito's teenage nephew, John Mosca ("Mosca"), who had been home watching television on the first floor, heard "two bangs." Gov't App'x at 14.

On the evening of Zito's death, various family members and friends, including Pandrella, gathered at Zito's home. When the conversation turned to the fact that Mosca had been home during the incident, Pandrella urgently asked Mosca's mother, Rose Zito, "Roe, Roe, Johnny Boy was home? Johnny was home? Roe, Johnny was home?" Appellant's App'x at 64.

## DISCUSSION

### I. There Was Sufficient Evidence to Establish Hobbs Act Jurisdiction.

We reject Pandrella's argument that the government "failed to satisfy the nexus element of" Hobbs Act robbery and that such failure "triggers the reversal of Pandrella's convictions." Appellant's Br. at 16.

We review a challenge to the sufficiency of the evidence *de novo*. *United States v. Alston*, 899 F.3d 135, 143 (2d Cir. 2018). In reviewing whether a conviction is supported by sufficient evidence, "we are required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021). We require only a *de minimis* showing of an effect on interstate commerce to establish Hobbs Act jurisdiction. *United States v. Rose*, 891 F.3d 82, 86 (2d Cir. 2018); *see also United States v. Silverio*, 335 F.3d 183, 186 (2d Cir. 2003) ("[I]t is the law in our

4

circuit that '[i]f the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act.'" (quoting *United States v. Perrotta*, 313 F.3d 33, 36 (2d Cir. 2002))). "Sufficient proof to support a violation of the Act has been presented if the robbery . . . 'in any way or degree,' affects commerce, even though the effect is not immediate or direct or significant, but instead is postponed, indirect and slight." *United States v. Jones*, 30 F.3d 276, 284–85 (2d Cir. 1994) (quoting *United States v. Augello*, 451 F.2d 1167, 1169–70 (2d Cir. 1971)). Moreover, we have held that loansharking can have an effect on interstate commerce. *United States v. Fabian*, 312 F.3d 550, 555–56 (2d Cir. 2002) (holding that stealing a loansharking business's assets "depleted the available assets for that business"); *United States v. McIntosh*, No. 14-1908, 2023 WL 382945, at *3 (2d Cir. Jan. 25, 2023) (summary order) (holding that the government sufficiently established the interstate commerce element when it showed that the loan shark who was robbed had loaned money to individuals who "used it for out-of-state contracts").

Here, there was sufficient evidence for the jury to conclude that Pandrella's theft of the luxury watches depleted Zito's business assets, and therefore had at least a potential effect on interstate commerce. During the trial, multiple witnesses testified that they borrowed money from Zito and still had outstanding debts at the time of his death in 2018. For instance, Michael McKnight testified that he received two interest free loans of $4,000 from Zito in 2018. Yuriy Zayonts ("Zayonts") testified that he borrowed $50,000 from Zito in August, shortly before Zito's death in October. Instead of requiring the standard three-percent interest on the loan, Zito insisted that Zayonts need not pay any interest at all. But Zayonts wanted Zito to "have peace of mind"

5

so he gave Zito a case of luxury watches worth approximately $30,000 as "security for the loan."[2] Appellant's App'x at 227. Further, various witnesses testified that they used Zito's loans to purchase goods made outside of the state. *See, e.g.*, Appellant's App'x at 191, 193–94 (witness testifying that he borrowed money from Zito to purchase drywall made by National Gypsum); Gov't App'x at 231–32 (stipulation agreeing that National Gypsum products were manufactured outside of New York State). Thus, the jury could reasonably conclude that stealing the watches depleted the loansharking business's assets, which had at least a *de minimis* effect on interstate commerce.

## II. Any Error in the Exclusion of Pandrella's Out-Of-Court Statements Was Harmless.

During Pandrella's cross-examination of Rose Zito, he sought to elicit the fact that when Pandrella gathered with the Zito family on the evening of October 26, 2018, he told Rose Zito and others that he had brought Zito breakfast that morning. The government objected, arguing that it was hearsay, and the district court agreed. The district court determined that Pandrella could not "offer the out-of-court statement[] itself" but could "confront [Rose] about whether or not she had *any* conversation with him." Appellant's App'x at 74–75 (emphasis added).

On appeal, Pandrella argues that the district court erred in excluding the statements as

---

[2] Pandrella argues that because the loan to Zayonts was "interest-free" it was "personal" with no connection to the lending "business." Appellant's Br. at 19 (emphasis omitted). However, there was sufficient evidence at trial for the jury to conclude that Zito's loan to Zayonts was a part of his loansharking business and accordingly that the watches were assets of the business. *See* Appellant's App'x at 167–68 (witness describing Zayonts as Zito's "customer"); *see also United States v. Wilkerson*, 361 F.3d 717, 731 (2d Cir. 2004) ("[T]he fact that a robbery takes place at a residence does not transform the robbery from the robbery of a business into the random robbery of an individual . . . so long as the evidence supports the conclusion that the robbery targeted the assets of a business.").

inadmissible hearsay because they were offered "*not* as proof of the facts asserted—i.e.[,] that he had breakfast with Zito—but as circumstantial evidence of [his] state of mind." Appellant's Br. at 30. We need not address Pandrella's argument because, even if the statements were erroneously excluded, the error was harmless.

"An erroneous ruling on the admissibility of evidence is harmless if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury." *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011) (quoting *United States v. Jackson*, 301 F.3d 59, 65 (2d Cir. 2002)). Here, the jury heard testimony from a Federal Bureau of Investigations ("FBI") case agent that Pandrella had openly told the FBI that he brought Zito breakfast the morning of Zito's death, and that Pandrella "didn't hide that fact" and "consistently maintained his innocence" during all interviews. Appellant's App'x at 252. These admitted statements accomplished the same thing the excluded statements would have—that is, they demonstrated Pandrella's purported "consciousness of innocence." Appellant's Reply at 9. Thus, we conclude that excluding Pandrella's substantively similar statements to Rose Zito did not substantially influence the jury.

### III. The District Court Did Not Erroneously Admit "Other Act" Evidence.

We reject Pandrella's argument that the government violated Federal Rule of Evidence Rule 404 by relying on "undisclosed 'other act[]' evidence to insinuate a criminal relationship between Pandrella and an alleged mafioso named George Lombardozzi [("Lombardozzi")]." Appellant's Br. at 32. We review a district court's evidentiary rulings with deference and reverse only if we find an abuse of discretion.[3] *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013).

---

[3] The parties dispute whether Pandrella properly contemporaneously objected to the evidence regarding Lombardozzi at trial, and thus, they dispute the relevant standard for reversal. We do

7

Rule 404 states that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed R. Evid. 404(b).

According to Pandrella, the government violated the rule by introducing evidence to associate him with Lombardozzi and the latter's connections to organized crime. However, the evidence Pandrella objects to, which establishes his relationship with Lombardozzi, was specifically used to explain his activities in the hours after the crime, which included dropping off a bag of items at Lombardozzi's home—presumably containing the stolen watches. Thus, the evidence at issue was "inextricably intertwined with the evidence regarding the charged offense" and therefore properly admitted. *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)); *see also United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (explaining that evidence of other acts does not violate Rule 404(b) "if it is necessary to complete the story of the crime on trial" (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000))).

\* \* \*

For the reasons set forth above, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

not address this issue because we conclude that the evidence was properly admitted, even under the more demanding abuse of discretion standard.

8